NOT FOR PUBLICATION [41]

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THOMAS S. FANSLAU, | : |
|  | : Civil Action No. 05-3848 (FLW) |
| Plaintiff, | : |
| v. | : OPINION |
|  | : |
| 177th FIGHTER WING OF THE AIR | : |
| NATIONAL GUARD OF THE STATE OF | : |
| NEW JERSEY, THE DEPARTMENT OF | : |
| MILITARY AND VETERANS AFFAIRS, | : |
|  | : |
| Defendants. | : |

**WOLFSON, UNITED STATES DISTRICT JUDGE**

Before the Court is the motion filed by Intervenor the United States of America ("United States") for summary judgment on the Amended Complaint of Plaintiff Thomas S. Fanslau ("Plaintiff"). Defendants, the 177th Fighter Wing of the Air National Guard of the State of New Jersey, and the Department of Military and Veterans Affairs of the State of New Jersey have joined in the motion filed by the United States, and also seek summary judgment on Plaintiff's Amended Complaint.[1] This lawsuit arises out of alleged retaliatory personnel actions taken against Plaintiff by his commanding officer in violation of the New Jersey Conscientious Employee Protection Act and other state laws. Defendants argue that Plaintiff's claims are barred by the Feres doctrine of intra-military immunity or are not justiciable in this Court. For the reasons that follow, Defendants' motion is granted, and Plaintiff's claims are dismissed.

---

[1] Through the powers granted to the Adjutant General in N.J. Stat. Ann. § 38A:3-6, the Department of Military and Veterans Affairs of the State of New Jersey oversees the New Jersey Air National Guard. The United States and both Defendants are referred to collectively, hereinafter, as "Defendants."

I.      BACKGROUND

Plaintiff joined the New Jersey Air National Guard in December 1986. See Plaintiff's Amended Complaint ("Am. Compl.") at ¶ 1.  He attained the rank 2nd Lieutenant in May 1996. Id. at ¶ 2.  On November 19, 1996, Plaintiff began permanent full-time duty with the 177th Fighter Wing of the New Jersey Air National Guard as a dual-status military technician and employee of the Department of the United States Air Force, Air Guard Reserve, pursuant to 32 U.S.C. § 502(f) and 10 U.S.C. § 10143. See Declaration of Dorothy Donnelly ("Donnelly Dec."), Ex. 2.  Plaintiff served in this capacity until March 2003, by which time he had attained the rank of Captain. Id.

According to Plaintiff, in September 2000, he formed a private video production business called "See It Anywhere, Inc.," which produced small market television commercials. Am. Compl. at ¶ 10.  All Air Guard Reserve personnel are governed by Department of Defense Directive 5500.7, the Joint Ethics regulation. See Donnelly Dec. at ¶ 6.  That regulation is incorporated by Air National Guard Instruction ("ANGI") 36-101, which is issued by the National Guard Bureau and which governs Air Guard Reserve members. Id. at Ex. 10.  Among other things, ANGI 36-101 regulates outside employment by Air Guard Reserve members and requires commanders to ensure that such outside employment does not create a conflict of interest for a member or otherwise run contrary to mission needs. Id. at Ex. 10.  On December 6, 2002, Plaintiff filed a Form 3902, seeking authorization for outside employment with "See It Anywhere, Inc." Id. at Ex. 3.  On December 14, 2002, Plaintiff's request was preliminarily approved by his immediate superior, Lieutenant Colonel ("Ltc.") Roger Pharo. Id.  The request was then forwarded to Colonel ("Col.") Michael Cosby, Plaintiff's commanding officer. Am. Compl. at ¶ 24.

Meanwhile, according to Plaintiff, in September, 2002, Col. Cosby asked Plaintiff to

examine certain computer and telephone records in connection with an investigation Col. Cosby was conducting into whether another soldier was engaged in unauthorized outside employment. Id. at ¶¶ 14-15.  Plaintiff asserts that the soldier Col. Cosby was investigating had filed a complaint against Col. Cosby with the Office of the Inspector General, and that Plaintiff believed Col. Cosby's investigation of the soldier was improper. Id. at ¶¶ 15-17.  Plaintiff reported his concerns to Ltc. Pharo, who, according to Plaintiff, "did not order" Plaintiff to disregard Col. Cosby's request. Id. at ¶ 18.  Plaintiff complied with Col. Cosby's request but informed Col. Cosby of his concerns about the propriety of the investigation. Am. Compl. at ¶¶ 19-22.  Later, relying on certain regulations he believed prohibited Col. Cosby's investigation, Plaintiff refused Col. Cosby's subsequent request to perform additional research for the investigation. Id. at ¶¶ 25-26.  According to Plaintiff, Col. Cosby retaliated against him for his refusal by denying Plaintiff's request for outside employment. Id. at ¶¶ 27; 29.  Plaintiff also alleges that, after Col. Cosby's decision, Plaintiff was "compelled to accept a demotion" to maintain his personal business. Id. at ¶ 28.

According to Plaintiff, on March 3, 2003, he filed a complaint against Col. Cosby with the Office of the Inspector General, in which he accused Col. Cosby of wrongfully denying his request for outside employment.[2]  On March 14, 2003, Plaintiff's earlier application for employment in the federal GS dual-status technician position of "Supervisory IT Specialist" was accepted, and he took the position. See Donnelley Dec. at Ex. 4C.  On December 17, 2003,

---

[2] In his Amended Complaint, Plaintiff does not set forth the date he filed his complaint regarding Col. Cosby's alleged retaliation.  However, in his Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiff asserts that he filed the complaint on March, 3, 2003. See Am. Compl. at ¶ 32; Plaintiff's Opposition Brief at pg. 9.

Plaintiff resigned his federal employment and his membership in the Air Guard Reserve, effective December 19, 2003. Id. at Ex. 5.

On July 19, 2004, Plaintiff filed a Complaint in the Superior Court of New Jersey against Col. Cosby, the 177th Fighter Wing of the Air National Guard of the State of New Jersey, and the Department of Military and Veterans Affairs of the State of New Jersey, in which he asserted a retaliation claim pursuant to the New Jersey Conscientious Employee Protection Act, ("CEPA") N.J. Stat. Ann. § 34:19-1, et seq., as well as common law retaliation and conspiracy claims. Plaintiff alleges that he was constructively discharged from his employment with the Air Guard Reserve due to his refusal to participate in Col. Cosby's investigation and Col. Cosby's subsequent retaliation against him.  Plaintiff seeks reinstatement of his status in the Air Guard Reserve, reinstatement of benefits, payment of lost wages, compensatory and punitive damages, and attorneys' fees and costs.  On September 20, 2004, Plaintiff filed an Amended Complaint in which he deleted Col. Cosby from among the named Defendants in his original Complaint, leaving on ly the State Defendants.[3]

On December 4, 2004, the Superior Court of New Jersey placed this matter on the military inactive list, pursuant to New Jersey Court Rule 1:13-6, because the 177th Fighter Wing of the New Jersey Air National Guard had been ordered to duty in Iraq, rendering Col. Cosby, who the court deemed a necessary witness, unavailable to participate in discovery. Fanslau v. 177th Fighter Wing of the Air National Guard, No. ATL-L-2235-04 (ordering case placed on military list).  On July 22, 2005, the state court granted the United States' motion to intervene in this

---

[3] The "State Defendants" are the 177th Fighter Wing of the Air National Guard of the State of New Jersey, and the Department of Military and Veterans Affairs of the State of New Jersey.

matter. Fanslau v. 177th Fighter Wing of the Air National Guard, No. ATL-L-2235-04 (granting motion to intervene by the United States). On August 1, 2005, the United States removed this matter to this Court, and, on October 31, 2005, filed this motion for summary judgment. The named Defendants joined the United States' motion for summary judgment on November 8, 2005.

## II.     DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 330. Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### B.     The Feres Doctrine and Plaintiff's State Law Claims

Defendants seek dismissal of Plaintiff's Amended Complaint on the grounds that Plaintiff's CEPA and state law claims are barred by the doctrine of intra-military immunity. The doctrine of intra-military immunity was first recognized in Feres v. United States, 340 U.S. 135

(1950). In Feres, the Supreme Court held that the United States government cannot be held liable under the Federal Tort Claims Act ("FTCA") for injuries to servicemen arising out of, or in the course of, activity incident to their military service. Id. at 146. Since Feres, the Supreme Court has steadily expanded the scope of intra-military immunity, or the Feres doctrine, as it has become known, to encompass a greater range of claims and defendants.[4] In Major v. United States, 835 F.2d 641, 645 (6th Cir. 1987), the Court of Appeals for the Sixth Circuit examined the Supreme Court's Feres jurisprudence and explained: "Review of these ... precedents makes it clear that in recent years the Court has embarked on a course dedicated to broadening the Feres doctrine to encompass, at a minimum, all injuries suffered by military personnel that are even remotely related to the individual's status as a member of the military, without regard to the location of the event, the status (military or civilian) of the tortfeasor, or any nexus between the injury-producing event and the essential defense/combat purpose of the military activity from which it arose." (emphasis in original).

The Third Circuit addressed the scope of the Feres doctrine, and, like the Sixth Circuit, broadly interpreted the military immunity it affords. See Loughney v. United States, 839 F.2d 186 (3d Cir. 1988); Jorden v. National Guard Bureau, 799 F.2d 99 (3d Cir. 1986). In Jorden a former member of the National Guard sued the National Guard Bureau, the Chief of the National Guard

---

[4] For example, in Chappell v. Wallace, 462 U.S. 296 (1983), the Court extended its ruling in Feres to bar Bivens actions by soldiers against their superior officers, noting that "[h]ere, as in Feres, we must be '[concerned] with the disruptions of '[the] peculiar and special relationship of the soldier to his superiors' that might result if the soldier were allowed to hale his superiors into court.'" Chappell, 462 U.S. at 304 (citations omitted). Other notable cases expanding the Feres doctrine include, United States v. Shearer, 473 U.S. 52, 57-60 (1985) (holding Feres bars FTCA claim against United States arising from off-base kidnap and murder of off-duty serviceman by another serviceman); Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 673-74 (1977) (extending Feres to bar indemnification claim against United States by a government contractor in a negligence suit by a National Guardsman arising from injuries incurred during training mission).

Bureau, and the plaintiff's supervisors in the Pennsylvania Air National Guard, pursuant to 42 U.S.C. § 1983, alleging a conspiracy to harass and discharge him based on his race and in retaliation for his exercise of his First Amendment rights. 799 F.2d at 101-02.  Relying on the Supreme Court's reasoning in Chappell, the Third Circuit explained that "where immunity of government officials is concerned, § 1983 and Bivens claims must be treated alike," and concluded that the plaintiff's constitutional claims were barred by the Feres doctrine. Id. at 105-06 (citing Butz, 438 U.S. 478 (1978)).

      Similarly, in Loughney, the Third Circuit considered a medical malpractice claim by the wife of a Pennsylvania National Guard sergeant who was on Active Guard Reserve Duty status when a surgical procedure left him in a coma.  Writing for the Circuit, Judge Higginbotham explained that "[i]t is simply the military status of the claimant that is dispositive," and held that because Sergeant Loughney was a serviceman whose injury arose out of, or in the course of, activity incident to his service, his wife's claim on his behalf against the Government under the FTCA was barred by the Feres doctrine, even though the alleged tortfeasor was not a member of the military. Id. at 188.

      In this case, Plaintiff has not named the United States as a Defendant, nor has he asserted any federal claims.  Consequently, he argues that the Feres doctrine is inapplicable and his case should be allowed to proceed.  Defendants assert that Plaintiff amended his original Complaint to remove Col. Cosby as a named Defendant simply to circumvent the consequence of the Feres doctrine on his claims.  They argue that despite Plaintiff's election to name only state entities as Defendants, the proper party Defendant in this case is the United States.  Additionally, Defendants argue that, in any event, Plaintiff's claims are barred by the Feres doctrine because they arise out of

his status as a member of the military, under authorization by federal law.

Plaintiff argues he was serving on state status in late 2002, when the events he alleges in his Amended Complaint occurred. However, he presents no evidence in support of that assertion. Defendants not only present employment records specifically noting that Plaintiff's employment at the relevant time was authorized under federal law, see Donnelley Dec. at Ex. 2, they also present other compelling evidence. Specifically, they cite an October 2, 2002 Air Guard Reserve memo discussing that effective May 3, 2002, no Congressional authority existed to allow Air Guard Reserve member to hold state status. See Donnelley Dec. at Ex. 9 (advising adjutant generals that "[t]here is currently no authority in law for AGRs to perform state missions...."). Thus, the record plainly establishes that at the time of the events described in his Amended Complaint, Plaintiff was a member of the New Jersey Air National Guard and committed to the Air Guard Reserve on orders issued pursuant to 32 U.S.C. § 502(f)[5]. Guardsmen serving on orders pursuant to § 502 are considered federal employees for the purposes of the FTCA. 28 U.S.C. § 2671.[6]  I find that no material question of fact exists as to Plaintiff's federal status at the time relevant to the allegations

---

[5] 32 U.S.C. § 502(f) provides in relevant part:

Under regulations to be prescribed by the Secretary of the Army ..., a member of the National Guard may-
(1) without his consent, but with the pay and allowances provided by law; or
(2) with his consent, either with or without pay and allowances;
be ordered to perform training or other duty in addition to that prescribed under subsection (a).

Here, Plaintiff sought and was selected for a position authorized under § 502(f).

[6] 28 U.S.C. § 2671 states in relevant part:

"Employee of the government" includes (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32...

...

in his Amended Complaint.

Similarly, there is no material factual dispute that Col. Cosby was also a federal employee at the time of the events giving rise to Plaintiff's claims. From January 3, 1999, through the time of his alleged commission of the acts about which Plaintiff complains, Col. Cosby was employed in a position authorized under the Technician Act, 32 U.S.C. 709, as a federal employee of the Department of the Air Force. See Donnelley Dec. Ex. 1. Plaintiff does not dispute this fact,[7] nor does he allege any wrongdoing by any other individual or entity. Accordingly, Plaintiff's only recourse for alleged wrongful acts by Col. Cosby is a suit against the United States under the FTCA.[8] See United States v. Smith, 499 U.S. 160, 163 (1991). However, I will not deny Defendants' motion for summary judgment without prejudice to allow Plaintiff to amend his Complaint to name the United States as a party Defendant because Feres would clearly bar such a claim. See Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the

---

[7] In his Brief in opposition to this motion for summary judgment, Plaintiff expressly adopts the statement of undisputed facts presented by Defendants, but denies that he was a federal employee. He does not dispute Col. Cosby's federal status. See Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Pf. Br.") at pg. 2.

[8] The relevant provision of the FTCA provides:

The remedy against the United States provided by [the FTCA] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred. 28 U.S.C. § 2679(b)(1).

In this case, Plaintiff's proper cause of action is a Title VII retaliation claim against the United States. Notably, in Urie v. Roche, 209 F. Supp. 2d 412, 414-15 (D.N.J. 2002), Judge Rodriguez held that Feres bars such a claim by a National Guard technician employed in federal status.

amended complaint would not survive a motion to dismiss"). Id.

Even assuming Plaintiff's claims against the State Defendants were somehow proper, I am persuaded that those claims are barred by the Feres doctrine. Although neither the Supreme Court nor the Third Circuit have confronted a case such as this, several decisions in related cases indicate that the Third Circuit would extend the Feres doctrine to bar Plaintif's CEPA and common law claims against the State Defendants. In Jorden, the Third Circuit held that the Pennsylvania Air National Guard defendants were entitled to immunity from the state law defamation claim brought by the plaintiff "in light of the recent decisions of the [Supreme] Court restricting the availability of damages actions against the military...." 799 F.2d at 108 n.12. Similarly, in Jaffee v. United States, 663 F.2d 1226 (3d Cir. 1981), the Third Circuit held that the rationale of Feres extended to bar a soldier's state law intentional tort claims against his Army supervisors arising from his military service. The Third Circuit noted that "[s]uits founded on state law have the same potential for undermining military discipline as federal tort claims." 663 F.2d at 1239.

In Egloff v. New Jersey Air National Guard, 684 F. Supp. 1275 (D.N.J. 1988), the district court dismissed state law claims brought by two former members of the Air National Guard against their supervisors arising from their discharge from guard service. Citing Chappell, Jorden and Jaffee, the district court stated that "[c]onsistency with these authorities ... requires the court to hold that [the] plaintiffs' damage claims against their Air National Guard [supervisors] founded upon state law for actions which allegedly transpired while plaintiffs were participants in military training pursuant to Title 32 of the United States Code are barred by the military immunity doctrine." Egloff, 684 F. Supp. at 1283.

Here, the alleged injuries for which Plaintiff seeks recovery arise out of, or were incurred

in the course of, activity incident to his military service.  That service was pursuant to federal statutes which rendered both Plaintiff and Col. Cosby federal employees for tort purposes.  The Third Circuit and courts in this district have applied the Feres doctrine to Title 32 Guardsmen. See Loughney, 839 F.2d at188; Urie, 209 F. Supp. 2d at 414-15; Egloff, 684 F.Supp. at 1283.  Consequently, I conclude that Plaintiff's claims for damages against the State Defendants are barred by the doctrine of intra-military immunity.

      Plaintiff asserts that the holding of the New Jersey Supreme Court in Phillips v. State Dep't of Defense, 98 N.J. 235, 248 (1985), provides an avenue by which his state claims may proceed against the State Defendants.  Phillips involved a National Guard soldier paralyzed during a field exercise while he was a passenger in an armored personnel carrier. Id. at 237-38.  The plaintiff sued the State of New Jersey, the vehicle manufacturer, and certain individual Guard members. Id.  The Supreme Court of New Jersey held that his claim against the State was barred by the doctrine of sovereign immunity, and that the plaintiff's only remedy was under New Jersey's military compensation law, N.J. Stat Ann. § 38A:13-1 to 38A:13-9. Id. at 321.

      The Court allowed the plaintiff's suit against his fellow Guard members, id. at 325, but, for two reasons, expressly declined to consider the question presented here, whether a suit may lie against a Guard member acting in a federal capacity.  First, the Court held that the issue was not raised in a timely fashion by the defendants. Id. at 246.  Second, the Court found that there was no evidence that the plaintiff was acting in federal status. Id. ("[t]he  argument assumes that [the] plaintiff's service with the National Guard was pursuant to 32 U.S.C. § 503 and that he was entitled to compensation only under 32 U.S.C. § 318."). Phillips is inapposite.

      In this case, there is ample evidence that both Plaintiff and Col. Cosby were acting in

federal status at the time of the events constituting the basis of Plaintiff's claims. Accordingly, even if Plaintiff had not deleted Col. Cosby as a party Defendant in this action, his claim against Col. Cosby could not proceed under Phillips. Likewise, Phillips does not authorize a tort suit against the State of New Jersey by an injured Guard member in federal or state status. It simply provides a remedy under the state military compensation law for personal injuries suffered by a Guard member in state status. I conclude that Phillips does not alter my determination that the State Defendants are immune from Plaintiff's state claims under the Feres doctrine.

Defendants also argue that even if the Court finds that the Feres doctrine does not provide them immunity from Plaintiff's claims, Plaintiff's Amended Complaint should be dismissed because of his failure to exhaust his administrative remedies under the relevant provisions of the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 2302(b)(8).[9] It appears, however, that the CSRA is inapplicable to Air Guard Reserve members. As defined in the CSRA, the "'civil service' consists of all appointive positions in the executive, judicial, and legislative branches of the Government of the United States except positions in the uniformed services...." 5 U.S.C. § 2101(1) (1970). "Uniformed services" is in turn defined by subsections (2) and (3) of § 2101 to include the Army and the Air Force. See, e.g., American Federation of Government Employees v. Hoffman, 543 F.2d 930, 941 (D.C. Cir. 1976). Finally, 5 U.S.C.A. § 2105(d) states "[a] Reserve of the

---

[9] Under the CSRA, retaliation against a "whistle-blower" is a "prohibited personnel practice." Id. An allegation of a "prohibited personnel practice" may be submitted to the Office of Special Counsel (OSC) of the Merit System Protection Board ("MSPB") for investigation. 5 U.S.C. §§ 1212(a)(2), 1214(a)(1)(A). If the OSC determines that there are reasonable grounds to believe that the prohibited personnel action was or is to be taken, the OSC may petition a member of the MSPB for a stay and may recommend "corrective action" to the agency involved, the MSPB, and the Office of Personnel Management. 5 U.S.C. § 1214(b)(1)(A)(i), (2)(B). The OSC may also recommend disciplinary action against an employee who is reasonably believed to have committed a prohibited personnel practice. 5 U.S.C. § 1215(a)(1)(A).

armed forces who is not on active duty or who is on active duty for training is deemed not an employee or an individual holding an office of trust or profit or discharging an official function under or in connection with the United States because of his appointment, oath, or status, or any duties or functions performed or pay or allowances received in that capacity."

By virtue of Plaintiff's statutory employment authorization under 32 U.S.C. § 502(f), which renders him on active duty for "training," Plaintiff is likely not an "employee" of the "civil service" for purposes of the CRSA. Defendants do not address this issue, nor present any case law or other authority in support of the proposition that the CRSA is applicable in this case. Instead, Defendants rely solely on cases involving claims asserted by civilian employees of the federal government against particular federal agencies. See, e.g., Bush v. Lucas, 426 U.S. 367 (1983); Willis v. Dep't of Agriculture, 141 F.3d 1139 (Fed. Cir. 1998); Mitchum v. Hunt, 73 F.3d 30, 34-35 (3d Cir. 1995). Defendants present no case applying the CSRA to Air Guard Reserve Members, nor has this Court discovered such a case in its research on the issue. While I am skeptical of the applicability of the CSRA to Plaintiff, I need not decide the issue, nor the impact of Plaintiff's failure to adhere to its procedures.[10] Plaintiff's claims for damages against the State Defendants are barred by the Feres doctrine of intra-military immunity, and, therefore his compliance, or lack thereof, with any applicable alternative remedial regime is irrelevant to the outcome of this case.[11]

---

[10] Assuming, however, that the CSRA does apply to Plaintiff, his failure to comply with its administrative remedy protocols would, as Defendants argue, require dismissal of his damage claims, but not his claim for injunctive relief. See Mitchum, 73 F.3d at 34-35.

[11] I also note Plaintiff's argument that he satisfied the applicable administrative remedy available to him with his alleged March 3, 2003, filing of a complaint regarding Col. Colby's alleged actions against him with the Office of the Inspector General ("IG"), pursuant to Air Force Instruction ("AFI")

**C.     Justiciability and Plaintiff's Claim for Injunctive Relief**

Plaintiff's Complaint also seeks reinstatement to his former position and such other injunctive or declaratory relief as may be proper. See generally Am. Compl. Defendants argue that Plaintiff's claim for such relief is non-justiciable and should be dismissed. In Jorden, the Third Circuit observed that the Supreme Court has not established a per se rule barring judicial review of all military matters, and held that claims by servicemen for injunctive relief, specifically reinstatement, which arise out of alleged constitutional violations are justiciable unless they call for "ongoing judicial oversight" of the military. 799 F.2d at 108-11; see also Dillard v. Brown, 652 F.2d 316 (3d Cir. 1981) (permitting claim by member of National Guard for injunctive relief where plaintiff sought declaration that certain regulations were unconstitutional).

I conclude that the Jorden exception to the intra-military immunity doctrine for claims seeking injunctive relief in the form of reinstatement is not applicable in this case. Plaintiff has not alleged any constitutional violations.[12] Furthermore, Plaintiff was not terminated from his

---

90-301, Command Policy-Inspector General Complaints Resolution. Plaintiff asserts that the fact that his IG complaint remains pending three years after its submission, demonstrates the futility of his attempt to utilize the administrative remedies available to him. Defendants assert that the delay is a result of Col. Cosby's continuous deployment in Iraq with the 177th Fighter Wing Unit. AFI 90-301 applies to Air Guard Reserve Members and incorporates the procedure of 10 U.S.C. § 1034, which provides protection against reprisals for whistleblower activities. See Donnelly Dec. at Ex. 7, § 3.16, pg. 95. Pursuant to AFI 90-301, an IG complaint asserting a violation of the statutory protections in § 1034 must be filed "within (60) days" of the complainant's awareness of the actions constituting the violation he alleges. Plaintiff did not specify the date Col. Cosby denied his application for outside employment, nor has Plaintiff presented a copy of his March 3, 2003 IG complaint to the Court. On this record, I cannot determine whether Plaintiff has fully complied with the requirements of AFI 90-301.

[12] Plaintiff argues that the Court should interpret his "inartfully drafted" Complaint as asserting a cause of action for violation of his constitutional rights. See Pf. Br. at pg. 8. Alternatively, he urges the Court to permit him leave to file a Second Amended Complaint to assert such a cause of action. Id. I cannot reasonably discern a claim for violation of any constitutional right from the allegations in Plaintiff's Amended Complaint. As a result, I decline Plaintiff's request for leave to amend. Indeed, I note that Plaintiff does not even offer a suggestion of what, if any, constitutional violation he might

position with the Air Guard Reserve, nor demoted.  Rather, he first applied for and accepted a different position, then, later, voluntarily resigned from his position and the Air Guard Reserve. See Donnelly Dec. at Ex. 5.  Nevertheless, Plaintiff argues that his resignation should be interpreted as a constructive discharge and seeks reinstatement to the position he held prior to Col. Cosby's rejection of his application for outside employment, and, as far as the Court can discern from Plaintiff's Amended Complaint, a reversal of Col. Cosby's decision on that issue. Am. Compl. at ¶¶ 34-36, 43.

Courts that have been presented with similar claims by servicemen for injunctive relief involving promotion or the correction of military records have found such requests to be non-justiciable.  The Court of Appeals for the District of Columbia Circuit noted:

> The justiciability of this case involving a claim to a military promotion and distinct claims for the correction of military records is limited by the fundamental and highly salutary principle that:
> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which [complaints of discrimination, favoritism, et cetera] can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953).

Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (declining to review Air Force major's claim for retroactive promotion).

Similarly, in Wenger v. Monroe, the Ninth Circuit held that a Guardsman's request for injunctive relief was non-justiciable, where the plaintiff sought the removal of a "flag" in his record that prevented his promotion and an injunction barring the Guard from enforcing the

---

assert in good faith based on the facts alleged in his Amended Complaint.

15

mandatory retirement provisions against the plaintiff during the pendency of his suit. 282 F.3d 1068 (9th Cir. 2002). The Ninth Circuit concluded:

> To determine whether a flag was appropriately placed on [the plaintiff's] record, and whether the investigation of the [ ] incident was conducted properly, a court would have to review all of the details of the placement of the flag and the conduct of the investigation. Thus,... review in this case would require a court to scrutinize numerous decisions made by various individuals, and would necessarily "involve the court in a very sensitive area of military expertise and discretion."

Id. at 1076 (citations omitted).

I finds the rationale of Kreis and Wenger persuasive, and hold that Plaintiff's request for reinstatement and adjustment of status is non-justiciable. Were I to hold otherwise, further proceedings would be required to review Col. Cosby's adverse personnel decision against Plaintiff, to assess the particular merit of Plaintiff's request for outside employment, and to gauge the propriety of Col. Cosby's determination that such outside employment would conflict with the mission of the 177th Fighter Wing at the time. I am convinced that such intervention and scrutiny of discrete command decision implicating the overall mission concerns of a National Guard unit is beyond the appropriate jurisdiction and competence of this Court. Accordingly, I find that Plaintiff's claims for injunctive relief are non-justiciable and I decline to review them.

### III.   CONCLUSION

For the reasons set forth above, the summary judgment motions of Intervenor the United States, and Defendants the 177th Fighter Wing of the Air National Guard of the State of New Jersey, and the Department of Military and Veterans Affairs of the State of New Jersey are granted.

An appropriate Order shall follow.

                                        <u>/s/ Freda L. Wolfson</u>
                                        The Honorable Freda L. Wolfson
                                        United States District Judge

Date: June 28, 2006.